IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM H. JOHNSTON, JR. and JANE JOHNSTON,<br><br>Plaintiff,<br><br>v.<br><br>JP MORGAN CHASE, N.A.,<br><br>Defendants. | No. 05 C 6675 |

## MEMORANDUM OPINION AND ORDER

Defendant JP Morgan Chase ("the Bank") moves for summary judgment against plaintiffs William H. Johnston, Jr. and Jane Johnston. For the following reasons, defendant's motion is granted in part and denied in part.

I.

On July 10, 1968, the Oak Park Trust & Savings Bank ("Oak Park Trust") issued an instrument titled "Savings Time Certificate of Deposit" ("the CD") to the Johnstons. The Johnstons had made a $25,000 deposit at the Oak Park Trust. The CD was signed by William Langley on behalf of Oak Park Trust and mailed to Mr. Johnston along with a letter dated August 13, 1968, also signed by Mr. Langley. The letter stated the CD's date of issue was July 10, 1968. Mr. Johnston put the CD and letter in his personal filing cabinet where it remained until the fall of 2003. Defendant is the successor to Oak Park Trust.

In the fall 2003, Mr. Johnston came upon the CD again. Mr. Johnston subsequently presented the CD to the Bank for payment. In turn, the Bank investigated the authenticity of the CD and whether the amount listed on it had ever been paid or turned over to the State of Illinois as abandoned under the Illinois Uniform Disposition of Unclaimed Property Act ("UDUPA"). The Bank did not find the CD to be fraudulent or that the amounts due on the CD had been paid to the State. Until the time of demand in 2003, there is no record of any correspondence among the parties concerning the CD except for the August 13, 1968 letter signed by Mr. Langley.

The Johnstons and officers of the Bank engaged in discussions attempting to resolve the claim for the amount listed on the CD. The parties disagree about the substance of these discussions, which took place over a series of face-to-face meetings in 2004. According to the Bank, the parties arrived at an understanding that the Bank would pay the Johnstons $95,000 in settlement, on the condition that the Johnstons sign a release, which was to be drafted by the Bank. In turn, Mr. Johnston claims the parties reached an oral settlement agreement, which was not conditioned on the Johnstons signing a release. Neither party disputes that the Bank subsequently drafted a "Settlement Agreement and Release" and sent it to Mr. Johnston. Mr. Johnston's lawyer reviewed the terms of the release and made changes to the draft. Mr. Johnston never signed the agreement or release.

II.

Summary judgment is only appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgement as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir. 1999); Fed. R. Civ. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). I do not make "credibility determinations, weigh the evidence, or decide which inferences to draw from the facts." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). "[I]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment should be denied. *Anderson*, 477 U.S. at 248.

A.  Count I

Defendant claims Count I is time-barred. Defendant contends the CD in this case is a receipt of a non-negotiable savings time deposit which matured in 1969 and that plaintiffs' cause of action accrued at that time. Plaintiffs argue the cause of action here did not accrue until Mr. Johnston presented the CD to the Bank in demand for payment in 2003, and therefore the complaint filed in 2005 was timely. I agree with plaintiffs.

In Illinois, "[i]t is a fundamental principle of banking law that the relationship between a bank and its depositor is created and regulated by the express or implied contracts between them." *Symanski v. First Nat'l Bank of Danville*, 242 Ill. App. 3d 391, 394, 609 N.E.2d 989, 991 (Ill. App. Ct. 1993) (citation omitted). The instrument at issue here is a non-negotiable certificate of deposit, which is a receipt for the deposit of funds in a bank. *See Bonhiver v. State Bank of Clearing*, 29 Ill. App. 3d 794, 802-03, 331 N.E.2d 390, 397 (Ill. App. Ct. 1975) (examining transferability of non-negotiable certificate of deposit). There are two different kinds of certificates of deposit: demand certificates and time certificates. *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 756 F.2d 230, 233 n. 1 (2d Cir. 1985) (citing G. Munn, *Encyclopedia of Banking of Finance* 178-79 (F.L. Garica rev. ed 1973)). Demand certificates of deposit are payable on demand, while time certificates of deposit are payable on a specific date, upon proper indorsement. *Id.*; *Bonhiver*, 29 Ill. App. 3d at 802-03, 331 N.E.2d at 397. Time certificates are similar to savings deposits, but have a definite date of maturity, and are evidenced by a certificate instead of a passbook entry. *See Gary Plastic Packaging Corp.*, 756 F.2d at 233 n. 1. The accrual date for a cause of action concerning a demand certificate is the time of demand. *See Emerson v. N. Am. Transp. & Trading Co.*, 303 Ill. 282, 286-88, 135 N.E. 497, 499 (Ill. 1922)

*cited in* Arlt v. Great Am. Fed. Savings & Loan Ass'n, 213 Ill. App. 3d 584, 588, 572 N.E.2d 1115, 1118 (Ill. App. Ct. 1991); *see also* 31 *Williston on Contracts* § 79:29 (4th ed. 2006) ("Until presentment and demand are made, there is no refusal of payment by the bank, and hence, no right of action."). In turn, a cause of action for a time certificate with a definite maturity date accrues on the date of maturity. *See Beynon Bldg. Corp. v. Nat'l Guardian Life Ins. Co.*, 118 Ill. App. 3d 754, 762, 455 N.E.2d 246, 251 (Ill. App. Ct. 1983).

In this case, the CD is titled "Savings Time Certificate of Deposit" and provides it is non-negotiable. The reverse of the certificate of deposit states in full:

> 1. This certificate of deposit will mature six months from date.
> 2. This certificate will be automatically renewed at the end of six months from date for additional successive periods of six months each from date unless registered holder shall present this certificate for payment within ten days after maturity or any extended maturity, or unless the bank shall, at least thirty days prior to maturity or any extended maturity, mail written notice to the registered holder at the address appearing on the books of the bank of its desire to redeem the certificate.
> 3. Interest at the rate shown on face of this certificate will be paid at the maturity of the certificate and at each extended maturity.
> 4. In the event this certificate is registered in two or more names, it is understood and agreed that, without regard to the ownership or source of all or any part of the funds used to purchase this certificate, the bank shall pay the entire amount thereof at maturity, together with any interest due thereon, to any person named therein surrendering it for payment, whether the other person or persons be living or not.

> 5. Under federal regulation this certificate may not be redeemed prior to maturity except in an emergency where it is necessary to prevent great hardship. In the event of such redemption prior to maturity, three months interest must be forfeited.

(Pl. Resp. at Exh. A, Tab 1.)

Specifically, paragraph 2 of the certificate provides that the CD will be renewed automatically "at the end of six months from date for additional successive periods of six months each from date unless registered holder shall present this certificate for payment within ten days after maturity or any extended maturity." This language does not limit the number of successive six month periods of renewal. *See Stephen L. Winternitz, Inc. v. National Bank of Monmouth*, 289 Ill. App. 3d 753, 758, 683 N.E.2d 492, 495 (Ill. App. Ct. 1997) (contract drafted by bank "should be construed strongly against the [b]ank") *(citing Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 115 Ill.2d 482, 493, 505 N.E.2d 314, 319 (Ill. 1987)). As a result of this provision, it cannot be said that the CD had a definite date of maturity, despite being titled "Time Certificate of Deposit." Therefore, this CD is more akin to a demand certificate. Moreover, the parties do not dispute there was no correspondence between the Bank and plaintiffs concerning the CD after 1968 and until the time of demand. Under the terms of the CD, in order for the Bank to cease renewals of the certificate it was required to "mail written notice to the registered holder at the address appearing on the books of the Bank of its desire to

redeem the certificate." There is no evidence of this ever taking place. As a result, the appropriate accrual date for plaintiffs' claim was the time of demand.

Defendant argues that the UDUPA prevented the CD from renewing more than twice; therefore the statute of limitations would have begun running in 1970. The UDUPA applies to all tangible and intangible property that has been "presumed abandoned." 765 ILCS 1025/1(1). This includes certificates of deposits. Under the UDUPA, however, the Bank was required "to timely report and remit to [the State Treasurer] property presumed abandoned." *Canel v. Topinka*, 212 Ill. 2d 311, 318, 818 N.E.2d 311, 317-18 (Ill. 2004) (citing 765 ILCS 1025/1 *et seq.*). The State then assumes custody over the property and "is required to cause notice to be published once in a newspaper of general circulation in the county encompassing the last known address of the property owner." *Id.* (citing 765 ILCS 1025/12). Therefore, the owners of the property have a right to claim their property against the State. *Id.* "The property holder's responsibility to the owner for the return of the property terminates once the property is delivered to the [S]tate." *Id.*, 818 N.E.2d at 318 (citing 765 ILCS 1025/14). In this case, the Bank submits no evidence that it presented a report or delivered the amount at issue on the CD to the State. Accordingly, the Bank's argument that the money at issue here should be presumed abandoned under the

7

UDUPA is unfounded in the record, as the Bank itself failed to comply with the requirements of the UDUPA. *See, e.g., Arlt*, 213 Ill. App. 3d at 590, 572 N.E.2d at 1119 (rejecting argument that action was time-barred under the UDUPA when there were "no facts in the record that indicate[d] [] defendant followed the procedures therein").

Defendant also argues that plaintiffs did not make their demand within a reasonable time, citing *Arlt*, 213 Ill. App. 3d at 588, 572 N.E.2d at 1118. However, *Arlt* explains that

> The determination of whether demand was made within a reasonable time does not govern whether or not a cause of action is barred by the statute of limitations. The statute of limitations issue is governed solely by when demand was made and refused and when the action was filed.

*Id.* In this case, the demand was made late in 2003 and the action was filed in June 2005. This does not exceed any of the potentially applicable statutes of limitations identified by defendant.[1]

Defendants also move for summary judgment on Count I arguing that, under Illinois law, plaintiffs cannot overcome the presumption that bank deposits are presumptively paid after 20 years after maturity. *In re Estate of Adolph Fantozzi*, 183 Ill. App. 3d 732, 735-36, 539 N.E.2d 340, 342-43 (Ill. App. Ct. 1989).

---

[1] None of the statutes of limitation identified by defendant in their motion for summary judgment bar a claim that has accrued in less than 3 years. *See* 810 ILCS 5/4-111 (3 years); 810 ILCS 5/3-118(e) (6 years); 735 ILCS 5/13-206 (10 years).

This argument suffers from the same malady as defendant's statute of limitations argument: it does not appear from the terms of the CD that there was a "final maturity date," in light of the unlimited, automatic renewal provision. Accordingly, the presumption cannot be invoked. Nevertheless, even if the presumption were to apply there is sufficient evidence in the record to rebut it. Unlike the cases cited by defendant, plaintiffs are the original CD holders, who have been in continued possession of the CD since 1968. Mr. Langley's affidavit provides that under the Bank policy the CD would not have been paid without either the CD itself or an affidavit that the CD had been lost. (Pl. Resp. at Exh. E.) There is no record of any such affidavit ever being signed by the Johnstons or presented to the Bank. The CD itself states it will only be paid upon presentment of the original CD. Finally, there is no evidence that the amounts due on the CD have been paid to the State under UDUPA. For these reasons, defendant's motion for summary judgment on Count I is denied.

B. Count II

Defendant moves for summary judgment on Count II, for breach of the purported settlement agreement, on the ground that there is no evidence that an agreement ever existed. Under Illinois law, in order to for an enforceable settlement agreement to be formed, there must be "an offer, an acceptance, and a meeting of the minds as to the terms of the agreement." *Sementa v. Tylman*, 230 Ill.

App. 3d 701, 705, 595 N.E.2d 688, 691 (Ill. App. Ct. 1992) (citation omitted); *see also Int'l Bus. Lists, Inc. v. American Tel. & Tel. Co.*, 147 F.3d 636, 641 (7th Cir. 1998) (examining Illinois law).

### III.

For the reasons stated herein, I deny defendant's motion for summary judgment.

ENTER ORDER:

*Elaine L Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: December 18, 2006